# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| JERIMIAH VAN HORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:17-cv-01179-LSC |
| | ) | |
| TUSCALOOSA COUNTY | ) | |
| COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Before the Court is Defendant, Tuscaloosa County Commission (the "County's"), motion for summary judgment. (Doc. 24.) The Motion has been briefed and is ripe for review. For the reasons stated below, the County's motion (doc. 24) for summary judgment is due to be granted.

## I.   BACKGROUND[1]

Plaintiff Jerimiah Van Horn ("Van Horn") was hired as a Detention Officer at the Tuscaloosa County Jail in September 2014. At the time he was hired, Van Horn had coronary heart disease and two stents in his heart, but had no physical restrictions due to this condition.

---

[1]   The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

The Detention Officer position at the Tuscaloosa County Jail has the following duties: supervising and keeping order among prisoners; taking periodic counts; maintaining constant watch for and reporting unusual conditions or disturbances; taking required action in emergencies to prevent escapes or suppress disorder; and checking prisoners in the jail. (Van Horn Depo. at Ex. 3.) Due to the nature of these tasks, Detention Officers are required to have the "[a]bility to control inmates individually and in groups. . . [and] [f]reedom from physical defects, particularly in hearing, vision or members to enable quick action and movement in the custody of inmates." (*Id.*)

As part of his job as a Detention Officer, Van Horn had to interact with the inmates he was guarding. For example, in February 2015, Van Horn suffered a shoulder injury when he had to perform a takedown of an inmate. On October 11, 2015, Van Horn experienced chest pains after he was forced to perform a takedown of a combative inmate. Due to these chest pains, Van Horn went to see his doctor. Van Horn's doctor advised him not to work the following two days. On October 16, 2015, Van Horn went to see a cardiologist about his chest pains. Three days later Van Horn underwent a cardiac catheterization with a stenting procedure. Van Horn's doctor released him to return to "light duty" starting on October 26, 2015. The exact terms of Van Horn's "light duty" release is unclear from the record.

Van Horn's doctor's note does indicate that side effects from the catheterization procedure included limitations in Van Horn's ability to stand for long periods of time. (Van Horn Depo. at Ex. 4.)Van Horn also testified at his deposition that as part of this "light duty" release he was instructed not to do any lifting, or prolonged walking or standing. (*Id.* at 77–79.) Van Horn testified that his "light duty" restrictions required him to be put into a position that limited involvement with inmates.

Although he was cleared for "light duty," Van Horn was told by the Sheriff's Office and County Administrator that there was no "light duty" position for a Detention Officer. Van Horn was told that he would need to be released for full duty before he could return to work. According to Van Horn, the County told him that "pretty much the females . . . get the no contact positions." (*Id.* at 81–82.) Van Horn asserts that female Detention Officers at the Tuscaloosa County Jail were assigned to duties where there was less likelihood of inmate contact as they switched places with Detention Officers in the control room during inmate counts, and did not have to push laundry carts.[2]

---

[2]    Plaintiff asserts on multiple occasions that "Female Detention Officers only stay in the control room, do not count inmates, and do not push laundry carts. Female Detention Officers do not have the same strenuous duties as the male Detention Officers. Moreover, pregnant female Detention Officer do even less strenuous work." (*See e.g.* Doc. 25 at 7 ¶18.) Upon review, the evidentiary submissions Plaintiff offers as supporting these statements do not support the

According to Van Horn an officer in the control room has limited inmate interaction. However, the record does not contain any evidence indicating whether a posting in the control room was a permanent assignment, an assignment that Detention Officers rotated through, or a stand-alone position. According to Van Horn, Detention Officers in the control room do not have to walk for prolonged periods, stand for prolonged periods, or do heavy lifting. During emergencies, Detention Officers who are inside the control room are instructed to remain in the control room. At one time, Chief Deputy Eric Bailey ("Chief Bailey"), who oversees operations at the Tuscaloosa County Jail, acted on his own initiative to place a female Detention Officer in her third trimester of pregnancy in the control room because there was less chance of involvement with inmates in the control room. (Bailey Depo. at 37–38.)

Due to Van Horn's inability to return to full duty, the County Administrator applied FMLA leave to Van Horn's absences through the remainder of 2015. The County then restarted Van Horn's 12 weeks of FMLA leave on January 1, 2016 because Van Horn was still not cleared to return to full duty. Van Horn had not been cleared to return to full duty when his FMLA leave expired at the end of March 2016. Pursuant to County policy, Van Horn was given an additional three

conclusions offered by Plaintiff. Accordingly, the Court when discussing the assignments allegedly given to female Detention Officers relies on the evidence provided.

days of leave. When Van Horn was still unable to return to work, he was terminated effective April 4, 2016. On April 18, 2016, the County sent a letter to Van Horn explaining that he had been terminated for exhausting his leave.

Prior to his termination, Van Horn inquired about other possible positions within the County jail, including a clerk position and process server position. Van Horn was informed that he would have to apply for these positions and sit for a certain tests pursuant to Civil Service Board policies. These Civil Service Board policies prevented the County from unilaterally reassigning Van Horn to the clerk or process server positions. To date, Van Horn has not been released for full duty.

## II.    STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge

should not weigh the evidence, but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment,

"[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III. DISCUSSION

The only claims pending before this Court are Van Horn's disability discrimination claims.[3] Van Horn alleges that the County violated both the ADA and Rehabilitation Act by (1) failing to accommodate him, and (2) terminating him. The County asserts that summary judgment should be granted in its favor because Van Horn is not a qualified individual with a disability.[4] Because the Court agrees that Van Horn is not a qualified individual with a disability, summary judgment is due to be granted.

The Eleventh Circuit applies "the burden-shifting analysis of Title VII employment discrimination claims" to ADA discrimination claims as well as Rehabilitation Act claims. *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1255 (11th Cir. 2007) (quoting *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir.

---

[3] In response to Defendant's motion for summary judgment, Van Horn consented to dismissal of his gender discrimination claim. (Doc. 25 at 12 n.1.) Accordingly, Van Horn's claims for gender discrimination are due to be dismissed.

[4] The County asserts that Van Horn is not disabled within the meaning of the ADA, but does not provide the Court with legal argument as to why it should make such a determination. Accordingly, for the purposes of this motion the Court assumes, without making such a finding, that a reasonable jury could conclude that Van Horn was disabled within the meaning of the ADA.

2000)); *Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000) (ADA); *Sutton v. Lader*, 185 F.3d 1203, 1208 n.5 (11th Cir. 1999) (Rehabilitation Act). Under *McDonnell Douglas*, the plaintiff carries the initial burden of producing circumstantial evidence sufficient to prove a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999). If the plaintiff meets his initial burden of establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1191 (11th Cir. 2016). If the defendant is successful, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Id.* (quoting *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)).

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)); *Sutton,* 185 F.3d at 1207 ("To establish a prima facie case under the [Rehabilitation] Act, an individual must show

that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability."). "This standard derives from the ADA's language, stating that 'no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual.'" *Greenberg*, 498 F.3d at 1263 (quoting 42 U.S.C. § 12112(a)).

A qualified individual with a disability is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).[5] An employer must provide reasonable accommodations for employees with known disabilities unless such accommodation would result in undue hardship for the employer. *Earl*, 207 F.3d at 1365. An accommodation is "reasonable"— and, therefore, required—only if it enables the employee to perform the "essential functions" of the job. *Id.* The plaintiff retains at all times the burden of establishing that reasonable accommodations were available. *Holbrook v. City of Alpharetta*, 112

---

[5] The Rehabilitation Act provides, in pertinent part, that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.)." 29 U.S.C. § 794(d). Accordingly, the ADA's statutory provisions and case law applying title I of the ADA apply with full force to Van Horn's claim under the Rehabilitation Act.

F.3d 1522, 1526 (11th Cir. 1997) (citing *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996)).

Before considering the availability of reasonable accommodations, the Court must identify the essential functions of Van Horn's job as a Detention Officer. *Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001); *see also D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005). Under 29 C.F.R. § 1630.2(n)[6], the essential functions of a job include "the fundamental job duties of the employment position the individual with a disability holds or desires," without paying attention to the marginal functions of the position. Evidence of whether a particular job function is essential includes, but is not limited to factors such as:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

. . . .

---

[6] Congress provided the EEOC authority to issue implementing regulations, including § 1630.2(n), to carry out the ADA. 42 U.S.C. § 12116.

29 C.F.R. § 1630.2(n)(3)(i-iv). A job function may be deemed essential "because the reason the position exists is to perform that function." *Id.* § 1630.2(n)(2)(1).

It is uncontested that the County's policies treat the ability to perform physical tasks and have inmate contact as an essential job function. The County's written job description specifically lists the following tasks as requirements of the Detention Officer position: supervising and guarding a group of inmates; taking periodic count of prisoners; maintaining constant watch for and reporting unusual conditions or disturbances; taking action in emergencies to prevent escapes or suppress disorder, including physical restraint; exercising mature judgment in the discipline and supervision of persons under restraint. (Van Horn Depo. at Ex. 3.) This job description also states that Detention Officers must have the "[a]bility to control inmates individually and in groups. . . [and] [f]reedom from physical defects, particularly in hearing, vision or members to enable quick action and movement in the custody of inmates." (*Id.*) The deposition testimony of both Chief Bailey and Van Horn[7] confirm that Detention Officers had to complete these tasks. In fact, Chief Bailey testified at his deposition that one of the main

---

[7] At deposition, Van Horn stated that he did not recognize this job description. Van Horn then, however, testified that the only difference he saw between the duties listed in this job description and the actual duties he had as a Detention Officers was that "we did a lot more than just what this says inside the jail work as a Detention Officer," including pushing laundry carts. (Van Horn Depo. at 57.)

differences between a clerk at the jail and a Detention Officer is "involvement[]
with inmates." (Bailey Depo. at 41.)

Van Horn attempts to create an issue of fact by arguing that these tasks,
most of which he admits he cannot complete, are marginal and unessential to the
position because his own personal observations reveal that females were not
required to complete such tasks. Accordingly, Van Horn asserts that "being in
substantial contact with inmates [is] a marginal and unessential task" to the
position of a Detention Officer at the Tuscaloosa County Jail. (Doc. 25 at 13.)

The evidence Van Horn offers in support of this proposition, taken in the
light most favorable to Van Horn, reveals a much more limited reality and
conclusion that a reasonable jury could reach.[8] Van Horn's deposition testimony
states that female Detention Officers would switch into the control room during
inmate counts, that females were not required to complete inmate counts, and that
females "don't do none of the work that men do." (Van Horn Depo. at 87.)
According to Van Horn, female Detention Officers did not have to push laundry
carts, and he was told by the County that "pretty much the females . . . get the no
contact positions." (*Id*. at 81–82.) Taking this evidence in the light most favorable
to Van Horn, a reasonable jury could conclude that the duties of a Detention

---

[8]     Van Horn's assertion that "Female Detention Officers only stay in the control room" is
unsupported by the evidence he cites as supporting this proposition.

Officer varied and that the County did not place female Detention Officers in close contact with inmates.

A variation in job duties standing alone does not indicate that a job function is nonessential. In fact, the Eleventh Circuit has found that minimal tasks may still be considered essential job functions. *See Holbrook*, 112 F.3d at 1527 (finding that although a police detective may not often be required to have the ability to collect evidence such ability was an essential job function); *Cremeens v. City of Montgomery, Ala.*, 427 F. App'x 855, 857–58 (11th Cir. 2011) (finding that firefighting was an essential job function of a fire investigator position even though the task may be infrequent for a fire investigator); *see also Pickering v. City of Atlanta*, 75 F. Supp.2d 1374, 1378–79 (N.D. Ga. 1999)(holding that inmate contact was an essential job function of a corrections officer even though the prison had positions involving less prisoner interaction).

In *Holbrook,* the Eleventh Circuit rejected a visually impaired police detective's argument that driving to crime scenes and collecting evidence—two functions the detective could not perform—were not essential functions of the job. The detective argued that these functions were nonessential because the historical record revealed that situations requiring crime scene investigation occurred rarely in the detective's jurisdiction. The Eleventh Circuit, however, reasoned that

"notwithstanding the historical record," it is impossible to "foretell with absolute certainty what crimes may be committed ... in the future." *Holbrook*, 112 F.3d at 1527. The court concluded that "[e]ven assuming [a detective] spends a relatively small amount of time performing the type of field work that [the plaintiff] concedes he cannot undertake" the record nonetheless establishes that the collection of crime scene evidence is an essential function of the job. *Id.* Similar to *Holbrook*, here, the fact that Van Horn or female Detention Officers may not have to frequently engage in such conduct does not in and of itself create a question of fact as to whether the ability to have contact with inmates was an essential job function based on the record before the Court. The job duties listed by Defendant and confirmed by Van Horn indicate that responding to emergencies and maintaining order, two actions that would at times require inmate contact, were some of the main functions of the Detention Officer position.

Nevertheless, Van Horn asserts that this case is similar to *Samson* v. *Federal Exp. Corp.*, 746 F.3d 1196, 1202 (11th Cir. 2014). In *Samson*, the Eleventh Circuit noted that there was a question of material fact as to whether a task was an essential job function because there was evidence that there were nine other employees who could perform the job function in question and the amount of time spent doing the task was miniscule. *Id.* In fact, only 3.71 working hours per year were spent

completing that job function. *Id.* Van Horn's argument here is unaccompanied by such evidence to contradict Defendant's job description and supporting testimony of the essential job functions of a Detention Officer. Van Horn speculates that inmate contact is marginal like test driving in *Samson* but fails to provide any evidence or a reasonable basis from which a reasonable jury could conclude that the ability to have inmate contact as a Detention Officer was nonessential.

Significantly, in *Samson* the question before the District Court and the Eleventh Circuit was whether a repair technician needed to be able to test-drive the large trucks he was hired to repair. 746 F.3d at 1202. The Eleventh Circuit's reasoning recognized that the consequences of a repair technician not being able to test-drive the truck were minimal and that the repair technician position did not exist to perform test-drives. The Court here cannot reach a similar conclusion based on the record in front of it. Instead, the evidence indicates that the physical requirements of being a Detention Officer, including prolonged standing and walking as well as the ability to have physical contact with the inmates, were essential and in fact the very reason the Detention Officer position existed.

While Van Horn asserts that the consequences of his inability to have inmate contact are minor, the consequences of having Detention Officers that are unable to properly control inmates, or stand or walk for a prolonged period could be

serious for the safety of both other employees and inmates.[9] These consequences may be limited when secured inside the control room. But, the consequences of not requiring a Detention Officer to be able to have substantial contact with inmates or move around when not sealed in a control room could be deadly. Van Horn himself knows the importance of these job functions as the evidence indicates that he was required to physically move around the jail prior to his injury and that on two different occasions he had to engage in physical contact with inmates that left him injured.

Because Van Horn has not raised a genuine issue of material fact as to whether physical activity and contact with inmates are essential job functions, the determination of whether he is otherwise qualified depends on a determination as to whether a reasonable accommodation existed. Van Horn's argument that a reasonable accommodation existed is unreasonable for a number of reasons, including the fact the accommodation Van Horn sought indefinitely relieved him of many essential job functions. The undisputed facts are that Van Horn could not have contact with inmates, could not walk for prolonged periods, and was generally limited in his ability to do most of the tasks associated with the Detention Officer

---

[9] Van Horn's request to be allowed to work "light duty" poses a threat not only to his own health and safety as it would require Defendants to assure that he would never have inmate contact but also that of his fellow Detention Officers who could not rely on him to assist in the case of a potential uprising.

position. In a nutshell, Van Horn is arguing that he should have been reassigned indefinitely to surveil inmates from the control room as he alleges females were allowed to do. Yet, Van Horn's testimony as to what he believed the job duties of female Detention Officers to be does not indicate that female Detention Officers were relieved of all other essential job functions.

Additionally, a request for an indefinite assignment to a "light duty" position is not a reasonable accommodation. *See Frazier-White v. Gee,* 818 F.3d 1249, 1256 (11th Cir. 2016). The evidence indicates that Van Horn had not recovered at the time of his termination, and that Van Horn has still not recovered or been released for full duty. Van Horn's request for this "light duty" reassignment did not indicate when he was capable of coming back to full duty. Accordingly, Van Horn's request was one for an indefinite "light duty" assignment and such an accommodation is not considered reasonable under the ADA.

Even if Van Horn's request had been for a definite period of time, the County is not required under the ADA to create a position to accommodate Van Horn. *See Sutton,* 185 F.3d at 1210–11; *Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997); *Lucas,* 257 F.3d at 1256 (noting that an employer is not required "to bump another employee from a position in order to accommodate a disabled

employee"). Van Horn has not presented any evidence that contradicts the County's assertion that there were no official "light duty" positions or that female Detention Officers were required to be able to have contact with inmates. A reasonable jury could not conclude based on Van Horn's personal observations that there were specialized positions or assignments for female Detention Officers that Van Horn was in fact able to perform due to his inability to walk or stand for prolonged periods. Van Horn's evidence also does not provide a sufficient basis for a reasonable jury to conclude that there was a permanent position that allowed a Detention Officer to stay in the control room at all times, let alone that such a position, if it did in fact exist, was available. The isolated instance of Chief Bailey assigning a pregnant Detention Officer to the control room does not under the ADA require the County to create a permanent position in the control room, when there is no evidence that such a position existed.

To the extent Van Horn seeks to hold the County liable for failing to engage in an interactive process with him to find a reasonable accommodation, the Court notes that Van Horn has yet to identify a reasonable accommodation that would have enabled him to perform the essential functions of the Detention Officer position. Consequently, Plaintiff has not demonstrated that a reasonable

accommodation existed such that the County's failure to engage in the interactive process rose to the level of being actionable. *See Willis*, 108 F.3d at 285.

Van Horn's arguments that the County discriminated against him by terminating him instead of transferring him to the process sever position or clerk position is equally unavailing. The undisputed evidence indicates that Van Horn was told that these positions were subject to Civil Service policies that barred the County's from unilaterally reassigning Van Horn to these positions. In fact, the evidence indicates that Van Horn would have had to sit for the appropriate test before the Civil Service Board could consider selecting him for a position. (Vines Aff.) The ADA does not require the County to reassign Van Horn "in violation of [] governing civil service rules." *Frazier-White*, 818 F.3d at 1257 (citing *Davis v. Fla. Power & Light Co.,* 205 F.3d 1301, 1306 (11th Cir. 2000)). Accordingly, Van Horn has not presented evidence to create a question of material fact as to whether there was any available alternate position available to him that he was qualified for at the jail.

Ultimately, Vanhorn has failed to show he was a "qualified individual" under the ADA because he could not perform the essential functions of being a Detention Officer with or without an accommodation. Situations may arise when a Detention Officer is required to engage with the very inmates he is tasked with

guarding, a fact the evidence indicates Van Horn is intimately aware of. Although these situations may be infrequent for some Detention Officers and vary depending on one's location in the jail, inmate contact as well as walking and standing are the reality of the job as a Detention Officer. The type of accommodation proposed by Van Horn— to be indefinitely relieved of inmate contact and placed solely in the control room— would force the County to eliminate the essential function of the job, and create a new Detention Officer or "light duty" position that does not exist. Thus, Van Horn's claim arising from the County's alleged failure to accommodate him and termination are due to be dismissed.

## IV. CONCLUSION

For the reasons stated above, the County's motion (doc. 24) is due to be GRANTED. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on May 22, 2019.

L. Scott Coogler
United States District Judge

195126